IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LISA CAMNETAR | : |
|     PLAINTIFF | : |
| V. | :     CIVIL NO. 3:11-CV-1218 |
| MONROE COUNTY CORRECTIONS FACILITY | :     (JUDGE RICHARD P. CONABOY) |
|     DEFENDANT | : |

**MEMORANDUM**

We consider here a Motion for Summary Judgment (Doc. 17) filed by Defendant Monroe County Correctional Facility ("Monroe County") on June 1, 2012. That motion has been fully briefed by the parties (Docs. 19, 22, and 23) and is ripe for disposition.

**I.    Background**

Plaintiff Lisa Camnetar, ("Plaintiff") is a corrections officers in the employ of Monroe County. (Doc 18, ¶ 56; Doc. 22-17 ¶ 56). Plaintiff was hired by Monroe County on March 26, 2007. (Doc. 1, ¶ 3). On the date Plaintiff was hired by Monroe County she was married to Anthony Camnetar. (Doc. 18, ¶ 5; Doc. 22-17, ¶ 5). Four days after gaining employment with Monroe County Plaintiff filed for divorce. (Doc. 18, ¶ 6; Doc. 22-17, ¶ 6). Plaintiff's divorce became final in August of 2007 (Doc. 22-17, ¶ 7). Incident to filing for divorce from Anthony Camnetar, Plaintiff represented that she had lived separate and apart from him since April 1, 2006. (Doc. 18, ¶ 12; Doc. 22-17, ¶ 12). However, Anthony Camnetar continued to reside with Plaintiff until December of 2009, some sixteen months after their divorce became final. (Doc. 11, ¶ 6).

1

Anthony Camnetar was no longer eligible for health insurance through Plaintiff's plan with Monroe County after Plaintiff's divorce became final in August of 2007, but Plaintiff did not remove him from her policy at that time because she was unaware that he was no longer eligible for such insurance coverage.  (Doc. 11, ¶ 7).  Plaintiff became aware that her former husband was no longer entitled to health care coverage in December of 2009 whereupon she contacted Monroe County regarding his removal from his plan. (Doc 11, ¶¶ 7-8).  Between the date the Camnetar's divorce became final and the date Plaintiff notified Monroe County that she was no longer married, Anthony Camnetar generated claims under Plaintiff's health insurance plan with Monroe County which exceeded $21,000.00.  (Doc 18, ¶ 27; Doc. 22-17 ¶ 27).

Each July Monroe County sends out letters to its employees explaining, among other things, that employees must remove dependants who are no longer eligible for coverage from their plan. (Doc. 18 ¶ 14; Doc. 22-17, ¶ 14).  Each July during the time period relevant to this lawsuit Monroe County posted notices at the Monroe County Correctional Facility that advised employees that health insurance representatives were available to meet with them to enroll, add, remove or make changes to their benefit plans.  (Doc. 18 ¶ 15; Doc. 22-17, ¶ 15).  Monroe County human resources employee, Isabelle Rivera, sends emails in July or August every year to all Monroe County employees advising them about open enrollment.  (Doc. 18, ¶ 17; Doc. 22-17, ¶ 17).  From the beginning of her employment until her termination, Plaintiff had a Monroe County email address (Doc. 18, ¶ 18; Doc. 22-17, ¶ 18).

Despite the aforementioned efforts of Monroe County to inform its employees of the need to periodically adjust their insurance coverage, Plaintiff claims that she did not remove her former husband from her health insurance coverage because she did not know about Monroe County's

policy requiring the removal of a former spouse after divorce.  (Doc. 18, ¶22; Doc. 22-17, ¶ 22). Plaintiff claims she became aware of this policy for the first time in December of 2009 and then promptly executed a "Change of Dependent Coverage Form" and furnished it and a copy of her divorce decree to Monroe County human resources employee Isabelle Rivera.  (Doc. 18, ¶¶ 23-26; Doc. 22-17, ¶¶ 23-26).  In February of 2010, Ms. Rivera reported to Bonnie Ace-Sattur, the Monroe County Director of Human Resources, that (a) Plaintiff's ex-husband had continued to be covered for health insurance purposes by Monroe County for some sixteen months after the divorce; and (b) in that time period the ex-husband had generated more than $21,000.00 in claims under the Plaintiff's health insurance plan.  (Doc. 18, ¶ 27; Doc. 22-17, ¶ 27).  Upon receiving this information, Ms. Ace-Sattur furnished it to the Monroe County Commissioners (Doc. 18, ¶ 29; Doc. 22-17, ¶ 29).  On March 15, 2012, the Monroe County Commissioners voted unanimously to terminate Plaintiff's employment).  (Doc 18, ¶3 1; Doc. 22-17,  ¶ 31).

     Monroe County contends that Plaintiff was terminated due to her failure to remove her ex-husband from her health care policy. (Doc. 18, ¶ 32).  Plaintiff believes she was terminated because of her gender and cites examples of two male co-workers who she believes were treated more favorable than she in similar circumstances.  (Doc. 22, ¶ 32).  On March 16, 2012, Donna Asure, Warden at the Monroe County Correctional Facility, called Plaintiff into a meeting and informed her that she was terminated effective immediately for insurance fraud.  (Doc. 18, ¶¶ 34-37; Doc. 22-17, ¶¶ 34-37).  The parties agree that the decision to fire Plaintiff was made by the Monroe County Commissioners.  (Doc. 18, ¶ 38; Doc. 22-17, ¶ 38).  After Donna Asure informed Plaintiff that she was terminated, she instructed Plaintiff to go to the Human Resources Department and speak to Bonnie Ace-Sattur, Director of Human Resources.  (Doc. 18, ¶ 39; Doc. 22-17, ¶ 39).  Officer Joseph

Dougher, Plaintiff's union advocate, was asked to accompany Plaintiff to the meeting with Director Ace-Sattur and was excused from his shift to do so. (Doc. 18, ¶ 40; Doc. 22-17, ¶ 40). Plaintiff, Officer Dougher, and Director Ace-Sattur met for between thirty and forty-five minutes and during that meeting Director Ace-Sattur explained that the Commissioners had reviewed the matter and recommended that she (Plaintiff) be fired for insurance fraud. (Doc. 18, ¶¶ 42-45; Doc. 22-17, ¶¶ 42-45). Officer Dougher testified that the Plaintiff was given a full explanation as to why she was terminated. (Doc. 18, ¶ 46; Doc. 22-17, ¶ 46).

After Plaintiff was terminated, her bargaining agent, Teamsters Local Union No. 773, filed a grievance on her behalf pursuant to the operative Collective Bargaining Agreement ("CBA"). (Doc. 18, ¶¶ 47-48; Doc. 22-17, ¶¶ 47-48). The arbitrator appointed pursuant to the CBA found that Defendant had failed to prove that "Ms. Camnetar willfully and purposefully deceived the County by her failure to inform MCCF (the employer) of the change in her marital status." Opinion and Award of Arbitrator Anthony F. Visco, Jr. (Doc. 22-2 at 7). Arbitrator Visco further concluded that Plaintiff was negligent, that she had violated Monroe County policy, and that her negligence had cost Monroe County significant sums of money. (Doc. 18, ¶ 54; Doc. 22, ¶ 54). The arbitrator directed that Plaintiff be reinstated without back pay, that her time out of work should be treated as an unpaid disciplinary suspension, and that she should make arrangements to reimburse her employer for medical expenditures made on behalf of her ex-spouse. (Doc. 18, ¶ 52; Doc. 22-17, ¶ 53). The Defendant reinstated Plaintiff as per the terms of the arbitrator's Opinion and Award. (Doc. 18, ¶ 56; Doc. 22-17, ¶ 56).

Plaintiff has filed a three-count Amended Complaint (Doc. 11) alleging that her discharge was motivated by gender discrimination as prohibited by Title VII of the Federal Civil Rights Act, 42

U.S.C. § 2000(e), and the Pennsylvania Human Relations Act, 43 P.S. §§ 951 et seq. (Counts I and III). She also alleges that the manner in which she was terminated violated her procedural due process rights as established by 42 U.S.C. 1983 (Count II). For the reasons that follow, we shall deny Defendant's Motion for Summary Judgment on both Plaintiff's Section 1983 claim and her claims regarding gender discrimination under Title VII and the PHRA.

**II.   Summary Judgment Standard**

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact." Fed. R. Civ. P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir. 2006) (citing Anderson, 477 U.S. at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 330 (1986) (citations omitted). The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." Id. at 325. The non-moving party may not rest on the bare allegations contained in his or her

pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Id. at 324.

"In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." Anderson, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

**III.     Defendant's Motion Regarding Plaintiff's Title VII Gender Discrimination Claim**

The crux of this matter is Plaintiff's assertion that she was dismissed because she was a woman. She alleges, essentially, that Defendant's proffered reason for her discharge - - her failure to inform Monroe County that her former husband continued to be inappropriately insured under its employee benefit plan - - was camouflage to disguise Monroe County's true motivation here. To support her assertion she offers "comparator" evidence which is designed to show that she was treated more severely than two similarly situated male co-workers had been treated previous to her discharge.

The first of these "comparators" involved a Monroe County Correctional Officer, one Anthony Perez, who was suspended without pay pending resolution of criminal charges that had been lodged against him. Upon his subsequent acquittal, Monroe County reinstated Perez. Plaintiff reasons that he was treated more leniently than she because she was terminated as opposed to being suspended. Monroe County responds that the disparate treatment was reasonable because Perez had never admitted any wrongdoing and was exonerated by a jury.

The second "comparator", which is more factually analogous to the events in the instant case,

6

involved another Monroe County Correctional Officer, one officer Hinton, who, while on Workman's Compensation status, was observed by a third party working a cash register at a supermarket. Like the first "comparator", Officer Hinton is a male who was suspended without pay pending an investigation. The investigation revealed that he had been cleared by his doctor to work the "light-duty" job at the supermarket whereupon Hinton was restored to his former position. The record is silent as to whether the money Officer Hinton made working at the supermarket was sufficient to have affected his compensation rate had he reported it to his employer. Here again, Plaintiff asserts disparate treatment because he was merely suspended without pay while she suffered the more Draconian penalty of discharge. Monroe County responds that, as with the first "comparator", it acted reasonably because Officer Hinton had never admitted wrongdoing and, as such, his situation was distinguishable from Plaintiff's. [1]

To establish a prima facia case of gender discrimination pursuant to Title VII of the Federal Civil Rights Act, the Plaintiff must demonstrate that: (1) she is a member of a protected class; (2) she is qualified for the position she held; (3) she was subjected to an adverse employment action; and (4) the circumstances surrounding that employment action give rise to an inference of discrimination. [2]

---

[1] The filings also reveal the Officer Hinton was disciplined by a suspension without pay of some unstated length. This suspension was in force because he had violated a Monroe County policy requiring that employees in Workman's Compensation status report any gainful employment to the employer. At time of trial, the Defendant may well have to explain why, in one episode involving an insurance coverage situation, it suspended an employee, while in another it discharged an employee for a similar transgression.

[2] The parties expend much effort in their briefs sparring over whether this case should be categorized as a "pretextual" case or a "mixed-motive" case. While the answer to that question may ultimately affect the type of proof that must be introduced at trial and determine which party has the burden of persuasion, to decide this Motion for Summary Judgment it is necessary only to determine whether Plaintiff's filings have made out a prima facia case. The parties argument over whether there is a "pretextual" case controlled by McDonnell Douglas Corporation v. Green, 411 U.S. 792

*Maky v. Chertoff* 541 F.3d 205 (3d. Cir. 2008). The Court concludes that the pleadings and other filings thus far submitted demonstrate that Plaintiff has succeeded in making out her prima facia case. While her "comparator" evidence is less than overwhelming, this Court cannot conclude as a matter of law that a reasonable jury could not find in Plaintiff's favor on the grounds thus far adduced. The Court is mindful of its obligation to draw all reasonable inferences in favor of the non-moving party (*Conoshenti*, *supra*, at 140) and to refrain from making credibility determinations at this stage (*Anderson, supra*, at 255). Perceiving, as we do, that this case may well turn on credibility determinations that are properly the province of a jury, we find that Defendant's Motion for Summary Judgment regarding Plaintiff's Title VII claim must be denied**.**

## IV.   Defendant's Motion Regarding Plaintiff's Due Process Claim

Defendant acknowledges that Plaintiff had a property interest in her job under the Fourteenth Amendment. (Doc. 19 at 20-21). Defendant also acknowledges such a property interest normally requires a level of due process that affords the employee a pre-termination hearing subsequent to notice of the charges against her and an opportunity to be heard in relation to those charges. (Doc. 19 at 21). Defendant correctly cites *Matthews v. Eldridge*, 424 U.S. 319, 333 (1976), for the proposition that the fundamental requirement of due process is the opportunity to be heard "at a meaningful time and in a meaningful manner." In our circuit it has been held that pre-termination due process is satisfied if, prior to termination, the affected employee receives: (1) written or oral notice of the charges; (2) an adequate explanation of the evidence; and (3) an adequate opportunity to present her side of the story. *McDaniel v. Flick*, 59 F.3d 446. 454 (1995). Based upon the pleadings

---

(1973), or "mixed-motive" case to be decided under the formula in Price-Waterhouse v. Hopkins, 490 U.S. 228 (1989), is basically irrelevant to the court's function to decide, as we do, that a material factual issue - - that being the true motivation behind Plaintiff's discharge - - remains in dispute.

and other documents that have been brought to the Court's attention, we cannot conclude as a matter of law that Plaintiff received the degree of due process to which she was entitled in this case.

First, we have reservations regarding whether Plaintiff received a pre-termination hearing at all. The record reflects that the Monroe County Commissioners voted unanimously to terminate Plaintiff at a meeting held March 15, 2010, yet Plaintiff's "pre-termination hearing" was held the next day, March 16, 2010, by Monroe County Warden Donna Azure and Human Relations Director Bonnie Ace-Sattur. The Court admits to some difficulty understanding how Plaintiff was afforded a "pre-termination hearing" one day after official action was taken to terminate her. [3] Moreover, the record developed thus far demonstrates that Plaintiff had no knowledge regarding the Defendant's charge that she had committed insurance fraud until being called into Warden Donna Azure's office immediately preceding the aforementioned "pre-termination hearing" before Human Resources Director Ace-Sattur.

We learn from the parties' Statements of Undisputed Facts (Docs. 18 and 22-17) that Plaintiff, her union representative, Officer Joseph Dougher, Ms. Ace-Sattur, and Isabelle Rivera met for thirty to forty-five minutes in Ms. Ace-Sattur's office on March 16, 2010. (Doc 18, ¶¶ 39-43; Doc. 22-17, ¶¶ 39-43). The parties agree that, after Warden Azure notified her that she would be fired, Ms. Ace-Sattur informed Plaintiff that she was being fired for insurance fraud. (Doc. 18, ¶ 45; Doc. 22-17, ¶ 45). Officer Dougher testified at his deposition that Ace-Sattur gave Plaintiff a full explanation as to why she was being fired. (Doc. 18, ¶ 46; Doc. 22-17, ¶ 46). Nonetheless, Officer

---

[3] Monroe County attempts to explain this away by noting that Plaintiff's termination was not official until the Salary Board meeting of May 17, 2010. This begs the question of whether anything Plaintiff could have said at her meeting with HR Director Bonnie Ace-Sattur could have changed the determination that the Monroe County Commissioners had apparently already made.

Dougher also testified that: (1) as shop steward he is usually present when discipline is meted out to prison employees; (2) he and Plaintiff went into the meeting with Warden Azure "cold" and had no advance inkling that Plaintiff was to be informed she was being fired; (3) it is the custom in the Monroe County Correctional Facility that whenever there is a disciplinary hearing he is given a packet in advance containing all the information to be used at the hearing; (4) he received no such packet of preliminary information prior to Plaintiff's hearing; (5) he was present there only as an observer; and (6) he viewed the event as more an announcement to Plaintiff that she was terminated than a hearing at which she could affect her fate.  (Dougher Deposition at 7-16).

In short, the events of March 16, 2010, as currently described in this case, cannot categorically be deemed the type of process which afforded the Plaintiff an opportunity to be heard "at a meaningful time and in a meaningful manner" as required by *Mathews v. Eldridge, supra.*  We simply cannot conclude at this point that the meetings between Plaintiff, Ms. Azure, Ms. Ace-Sattur, Mr. Dougher and Ms. Rivera on March 16, 2010 constituted, singly or in combination, the pre-termination hearing to which Plaintiff was entitled under the cases cited above.  Accordingly, Defendant's Motion for Summary Judgment on the issue of Plaintiff's due process claim must be denied.

**V.    Defendant's Contention That it is Entitled to Summary Judgment Because Plaintiff Sued the Wrong party**

The docket reveals that Plaintiff initiated this action by Complaint filed June 28, 2011.  (Doc. 1).  The Complaint named Monroe Correctional Facility as Defendant.  On November 7, 2011, Defendant's counsel, categorizing himself as "attorney for Monroe County Correctional Facility", filed a motion (Doc. 8) to strike a claim for punitive damages in the complaint.  In response,

Plaintiff's counsel filed an Amended Complaint (Doc. 11) on November 25, 2011 which deleted any reference to punitive damages. In its Answer (Doc. 12) to the Amended Complaint, Defendant raised the argument that it was not an appropriate party for the first time and claimed that Plaintiff should have sued Monroe County itself. Defendant then moved for summary judgment, inter alia, because it was not technically an appropriate party and briefed that position (Doc. 19). Plaintiff's Brief in Opposition to Defendant's Summary Judgment Motion (Doc. 22) included, as Exhibit 18, a Memorandum of Law in Support of Motion to Correct Caption of Amended Complaint which, unhappily for Plaintiff, was unaccompanied by a motion containing a certificate of concurrence or non-concurrence from opposing counsel as required by Local Rule 7.1 of the Rules of Court for the Middle District of Pennsylvania. Nonetheless, Plaintiff's memorandum in support of a non-existent motion cites compelling reasons why her Amended Complaint should be deemed to have named Monroe County as the Defendant in this case. Moreover, Defendant did not brief its opposition to Plaintiff's request to change the caption of the Amended Complaint.

      Suffice it to say that Rule 15 (a) of the Federal Rules of Civil Procedure requires that leave to file an amended complaint should be "freely given when justice so requires". Rule 15(b) even anticipates situations where it would be appropriate to amend pleadings during and after trial. Also, and importantly, there could be no credible argument made here for the proposition that Monroe County is prejudiced by Plaintiff's proposed amendment. In reality, Monroe County has been represented here from the outset and cannot show surprise, the need to bear additional expense, nor any type of prejudice that could militate against permitting the amendment Plaintiff seeks. Nor can Defendant credibly claim that said amendment would be futile for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the

operative standard to determine futility in this context under Brown v. Phillip Morris, Inc. 250 F.3d 719 Third Circuit 2001.  Accordingly, to further the liberal policy in this circuit favoring amendment of pleadings, the Court concludes that ample justification exists to permit amendment here. Consequently, the Court will deny Defendant's Motion for Summary Judgment to the extent it is based upon Plaintiff's designation of the wrong party and will direct that the caption in the case be amended to designate Monroe County as the Defendant in this matter.

DATED September 27, 2012

BY THE COURT                                          S/Richard P. Conaboy
                                                        Richard P. Conaboy
                                                        United States District Court